UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **BOLLINGER AMELIA REPAIR L.L.C.** *Plaintiff/Counter defendant* | **CIVIL ACTION NO. 07-0142** |
| VS. | JUDGE MELANÇON |
| **M/V PALADIN SHADOW II** *in rem* **PALADIN SHADOW II INVESTMENTS L.L.C. SHADOW MARINE L.L.C.** *in personam* *Defendants/Counter claimants* **BOLLINGER SHIPYARDS LOCKPORT L.L.C. BOLLINGER QUICK REPAIR L.L.C. BOLLINGER LAROSE L.L.C. BOLLINGER FOURCHON L.L.C. BOLLINGER MORGAN CITY L.L.C. BOLLINGER GRETNA L.L.C. BOLLINGER GULF L.L.C. BOLLINGER CALCASIEU L.L.C. BOLLINGER TEXAS CITY L.P.** *Counter defendants* | **MAGISTRATE JUDGE METHVIN** |

*MINUTES OF CONFERENCE AND RULING ON MOTION TO COMPEL*
*January 15, 2008*

The undersigned held an telephone conference on January 15, 2008 from 10:00 a.m. to 11:00 a.m. to address Bollinger Amelia Repair, L.L.C.'s ("Bollinger") Motion to Compel Discovery.[1]  At the request of counsel, and because of the upcoming January 22nd discovery deadline, the motion was given expedited consideration.  The conference was held prior to Shadow Marine, L.L.C.  ("Shadow Marine") filing an opposition. Participating in the conference were: Laurence DeBuys and Patrick Juneau for Bollinger, and Robert Edwards, for Shadow Marine.

In July, 2006, Bollinger entered into a contract with Shadow Marine and Paladin Shadow II Investments, L.L.C. ("Paladin") wherein Bollinger was to perform repairs and modification to

---

[1] Rec. Doc. 120.

2

the M/V PALADIN SHADOW II, a vessel owned and operated by Shadow Marine and Paladin. Bollinger maintains that after the contract was signed Shadow Marine and Paladin increased the scope of work to be performed. According to Bollinger, it performed the work as requested, however, Shadow Marine and Paladin did not pay for the additional repairs. Bollinger filed suit against Shadow Marine, Paladin, and the vessel, seeking the total of the unpaid invoices, contractual interest, and attorneys' fees. In response, Shadow Marine, Paladin, and the vessel filed a counter claim against Bollinger and other Bollinger interests alleging that the counter claimants were fraudulently induced into entering the contract, that counter defendants fraudulently overcharged for work that was poorly done, and that counter defendants breached the contract.

Bollinger propounded Requests for Production of Documents and Interrogatories on Shadow Marine on July 23, 2007. Shadow Marine served objections and responses to the discovery on August 31, 2007. Counsel for Bollinger requested that Shadow Marine supplement its responses, however, Shadow Marine maintained its objections. As ordered by the undersigned, counsel conferred on January 10, 2008 to attempt to resolve the disputes raised in Bollinger's Motion to Compel. Although counsel resolved some disputes, issues remain regarding the discovery of contention information and insurance policies.

**Contention Interrogatories and Requests for Production of Documents**

Interrogatory No. 12 states:

Please state in detail each and every act of fraud, fraudulent inducement and/or misrepresentation on the part of Bollinger upon which you base or will base your claim for damages, and with respect to each, please state the name and address of the person or persons who you contend committed such fraudulent act or act of misrepresentations; when such act was committed; the particular conduct which was alleged to have caused or contributed tot he damage; the name and address of

3

each person having or believed to have knowledge of such conduct; and, how each fact serves to establish a breach of a specific duty owed to you.

Requests for Production of Documents Nos. 33-36, 39, and 46, seek "any all records which support" Shadow Marine's claims of fraud, breach of contract, estoppel, and conspiracy by the Bollinger parties.

Shadow Marine objected to answering the Interrogatory because it was overly burdensome and objected to the production of the documents based on the attorney-client privilege and work-product immunity. In fact, however, during the conference, counsel for Shadow Marine stated that all responsive documents have been provided – in other words, boxes of papers have been delivered to Bollinger. Shadow Marine objects, however, to identifying which documents respond to which request. Shadow Marine argues that identification and ordering of the documents would reveal counsel's mental impressions and trial strategy.

Shadow Marine's position is untenable and unsupported by the applicable law.

By producing the documents, Shadow Marine admits that they are not protected by attorney-client privilege or the qualified work-product immunity *per se*. With respect to mental impressions, a review of the applicable Rule is instructive.

Rule 26(b)(1) provides that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense..." Certain documents and materials may be protected from discovery if they constitute attorney work product or mental impressions. Rule 26(b)(3) FRCP provides, in pertinent part:

> **(3) Trial Preparation: Materials.**
>
> (a) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

4

attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

>   (i) they are otherwise discoverable under Rule 26(b)(1); and

>   (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

>   (B) Protection Against Disclosure. *If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.*

The discovery requests in dispute are "contention" interrogatories and requests. They seek discovery of information and materials which support the basis of Shadow Marine's claims and defenses. Discovery regarding the basis for claims is common place. In fact, such discovery is sanctioned by the Federal Rules of Civil Procedure:

>   An interrogatory may relate to any matter that may be inquired into under Rule 26(b). *An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.*

Rule 33(a)(2) FRCP (emphasis supplied).

The 1970 Committee Notes to Rule 33 explains that, "As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery. See Diversified Products Corp. v. Sports Center Co., 42 F.R.D. 3 (D.Md.1967); Moore, supra; Field & McKusick, Maine Civil Practice § 26.18 (1959)." Likewise, the most recent Committee Notes acknowledge that, "Opinion and contention interrogatories are used routinely."

5

Shadow Marine has lodged serious fraud and intentional wrongdoing allegations against Bollinger. The Counterclaim discusses some invoices that purportedly support Shadow Marine's claims, however, Bollinger is entitled to obtain specific information regarding the contentions.[2]

Shadow Marine relies on a line of cases in the Third Circuit which hold that selection and ordering of documents by attorney prior to, and for the purpose of preparing a witness for, a deposition, may be protected by the qualified work product immunity, the instant case does not involve deposition material. In any event, there are no Fifth Circuit cases adopting this rule. *See* Sporck v. Peil, 759 F.2d 312, 315-317 (3rd Cir.1985) (selection and ordering of documents by attorney prior to witness' deposition was work product); *see also* Castano v. American Tobacco Co., 896 F.Supp 590 (E.D.La. 1995), In re Shell Oil Refinery, 125 F.R.D. 132, 133 (E.D.La. 1989), and In re San Juan Dupon Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988) (rejecting Sprock).

Moreover, Sprock is clearly distinguishable for the case at bar. In Sprock, the attorney selected and compiled certain documents for his client to review prior to his deposition. Sprock, 759 F.2d at 313. The information clearly showed what aspects of the case the attorney thought was relevant to his client's testimony. Moreover, counsel had no expectation that the compilation of information would be shared with others. The court concluded that the selection of the information by counsel prior to the deposition was not discoverable because "without the protection that the work product doctrine accords his preparation, defense counsel may have foregone a sifting of the documents, or at the very least chosen not to show the documents to

---

[2] Rec. Doc. 15.

petitioner. As a result, petitioner may not have been as well-prepared for his deposition...." Id. at 318.

Responding to contention requests is a process far removed from compiling materials for preparation of a witness for testimony. All document production necessarily entails an assessment by counsel of whether the documents are relevant to facts, legal theories, and/or defenses alleged. Identification of the documents requested is not a "protected process." If that were the case, all document requests could be satisfied by producing boxes of unidentified documents, requiring opposing counsel to figure out which documents are responsive to which requests.

There is no support for counsel's argument that producing documents in response to the contention requests would reveal protected mental impressions. "Not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product. Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule." In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1015 (1st Cir.1988) (citation omitted); *see also* Piatkowski v. Abdon Callais Offshore, L.L.C., No. 99-3759, 2000 WL 1145825, at *2 (E.D.La. Aug.11, 2000) (work product doctrine "is not an umbrella that shades all materials prepared by a lawyer, or agent of the client."). To a certain extent, Rule 26 requires production of some of counsel's mental impressions. Rule 26(a)(1)(A)(ii) requires parties to provide "a copy... of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support it claims or defenses..." Thus, the initial disclosures necessarily contain some of counsel's mental impressions because it requires production of documents that counsel

7

deems potentially supportive of his client's claims or defenses. This is precisely the information sought by Bollinger.

Moreover, the requests are not an attempt to obtain information that counsel could not foresee having to provide to opposing counsel.[3] Shadow Marine has lodged fraud claims against Bollinger. Under F.R.C.P. Rule 9, an allegation of fraud must "state with particularity the circumstances constituting fraud or mistake." It follows that such particularity must also be expanded upon during discovery. Counsel had no expectation that the basis for fraud allegations would remain secret or otherwise be protected from disclosure.

---

[3] *See* In re San Juan Dupon Plaza Hotel Fire Litigation, supra, in which the court upheld a magistrate judge's order that parties identify and disclose documents they would use to interrogate a deponent five days prior to the deposition. Id. at 1009. The court determined that because the information would come to light eventually, it was discoverable:

> More to the point, the challenged order does not result in the evulgation of matters which would otherwise remain perpetually hidden. When the deposition is held and examination commences, the questioner's document selection, and the stratagems it reveals, will become obvious to all. Requiring preidentification merely moves up the schedule, accelerating disclosures which would inevitably take place. Consequently, the resultant lists cannot validly aspire to the stature of opinion work product, nor can they command the correlative degree of (heightened) protection.
>
> We recognize, of course, that the process of selecting relevant documents for use in depositions "is often more crucial than legal research." Shelton v. American Motors Corp., 805 F.2d 1323, 1329 (8th Cir.1986). But as we have already pointed out, the information spotlighted by such lists (including whatever insights may be gleaned from the choice of exhibits) will undeniably be gained during the course of the deposition. Like requiring pleadings, answers to contention interrogatories, pretrial exhibit and witness lists, and trial memoranda, the district court's identification protocol merely adjusts the timing of disclosure. The situation is not remotely analogous to the situation where a party seeks an attorney's personal notes and memoranda which contain his confidential assessments of the testimony of prospective witnesses. See Hickman, 329 U.S. at 512-13, 67 S.Ct. at 394. Such notes and memoranda are usually prepared solely for the attorney's own use-or at most, for confidential consideration between attorney, client, and their privies ( e.g., junior counsel, investigators, retained experts). Under ordinary circumstances, the lawyer can expect that such materials will never be subject to his opponents' scrutiny-or at least, that he can effectively control whether or not such dissemination will occur. In contrast, no lawyer can be so sanguine as to expect that the opposition will not become privy to his choice of deposition exhibits; the exhibits are integral to the taking of the deposition and will, by definition, have to be revealed during the session.
>
> Id.

8

For the foregoing reasons, Shadow Marine was **ORDERED** to fully and completely answer Interrogatory No. 12. and Request for Production of Documents Nos. 33-36, 39, and 46.

**<u>Interrogatory and Request for Production of Documents Concerning Insurance</u>**

Interrogatory No. 9 and Request for Production of Documents No. 65 seek the identity and copies of all insurance policies on the M/V PALADIN SHADOW II which were in effect during 2006 and 2007. Shadow Marine objected, arguing that the insurance information sought was not relevant because the policies did not provide coverage for the incident at issue. Bollinger maintained that the insurance policies are relevant because the contract between the parties required Shadow Marine to have insurance while the vessel was housed at the Bollinger facilities, and thus, if Shadow Marine did not have insurance, they were in violation of the contract.

The undersigned concluded that because the contract called for Shadow Marine to have insurance, the information sought is relevant and therefore discoverable. Moreover, answering the Interrogatory and producing the information will not be burdensome. Accordingly, Shadow Marine was **ORDERED** to fully and completely answer Interrogatory No. 9 and respond to Request for Production of Documents No. 65.

*Conclusion*

Considering the foregoing,

**IT WAS ORDERED** that Bollinger's Motion to Compel be **GRANTED**.

**IT IS FURTHER ORDERED** that Shadow Marine shall provide full and complete answers and responses to the discovery within 10 days.

9

**IT IS FURTHER ORDERED** that any appeal to the district judge of this Ruling shall be filed on or before **January 29, 2008.**

Signed at Lafayette, Louisiana, on January 23, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)